HowEim, J.
The State claims the sum oí $2,524 20, as the tax legally-assessed, for the year 1869, on the capital stock of the defendant, amounting to $865,435, and not exempted from taxation by its charter.
The defence is, that the capital amounts only to $573,500, of which the sum of $149,436 68 is invested in real estate, otherwise taxed, and stocks not subject to taxation, leaving the amount of $424,063 32, on which the company is, and has always been, willing to pay the State tax.
From the evidence' in the record, it appears that the assessor did not include in his estimate the amount invested in real estate, and bonds claimed in the answer to be exempt from taxation as capital, and the only question is, whether or not the amount of the capital was properly' fixed by the assessor.
The revenue law, in force in 1859, (see Acts 1855, p. 509, l 31) made it the duty of an officer of the company to furnish the assessor, on or before the let-day of March eaoh year, a statement under oath, specifying the real estate owned by the company, the capital stock actually paid in and not vested in real estate, and the place in which it is liable to be taxed. By another section (34) of said law, the assessor is authorized, in case of failure to get the list required of tax-payers, to make the assessment according to his own knowledge, and the best information he can obtain.
By section 4, 6f “ an act to regulate corporations generally,” approved 15th March, 1855, (Session Acts, p. 486) the officers of each insurance company are required to publish.annually a full statement under' oath of the business of the company, which shall contain the amount of premiums received during the previous year, the amount of losses sustained, and the amount of capital; stating the portion- of the same invested in securities, and the nature thereof.'
In conformity with this law; and its charter (as represented) the defendant published a statement on 16th March, 1859, for the year ending 28th February, 1859, showing the assets to be $997,227 02, from which it appears the assessor made the assessment in question.
The-District Judge held thó'.company liable for the tax-on the sum thus ascertained by the assessor, and referred to two cases reported in 8 N. S. pp. 629, 680, as defining what constitutes capital,- viz: “That'which the company uses to accomplish the purp'ose'for which it was formed.” """
Under the circumstances,'we-think;the Judge- did not err. The assessor, not-having been furnished-w'ith-'thé'Statemgnt-required, on or before the . 1st March, pursued thé mo'dó ’abbvé indicated to ascertain .the capital d'f the company. The 37th'¥ébtiptí-'of'--the revenuémcf provides thé'ínáím'ér'' in which errors in assessments may be corrected, and, the defendants, not having 'follówed that course, it requires something'more than we find in the record to be relievéd of the assessment, which 'seems to have been made as direoted by law.
The secretary of the company testifies that he addressed a communication on 28th June, 1859, to the assessor, setting forth the capital of the’ company subject to taxation on the 1st May, 1859, as'shown by the books and balance sheet of that date, and consisting of “ scrip certificates for profits, ” which, after corrections made by him on the witness stand, fixed the-capital-at $476,500. But the assessor did-not adopt this statement in *476 place of the estimate and assessment already made by him, and we see no' reason why we should.
The charter of the company is not before us, and we are not informed why .these “ scrip certificates for profits ” should any more constitute the entire capital of the company than the items taken by the assessor from the sworn published statement of the company, made at the time and in the fiianner prescribed by law, and which it is presumed afforded the best-information the assessor could obtain for making the assessment.
, - It will be. observed that the law requires the assessor to make the assessment “ according to his own knowledge, and the best information he can obtain in-relation to it,” in case the tax-payer does not furnish the statement within the time prescribed, and the evidence in this case does not show such error,in the action of the assessor, as to authorize the intervention of the judicial power.
The defendant did not adopt the mode prescribed by law, to have the roll corrected, if erroneous.
,.. Judgment -affirmed, with costs.
■JReliiionfor Rehearing.—Counsel for appellants petitition the Court for a'rehearing in this case, from the conviction that there is error'in the judgment of the Court, and trusting that a reconsideration -of the case will 'lead to a different' result. •. '
i-In-.their:brief, counsel, failed, perhaps, to set forth clearly to the minds' of- the Court, the principles on which the business of mutual insurance companies is carried on.
As- regards capital, the system of mutual insurance differs very'materially from the old system of joint-stock insurance companies. The latter have.a capital stock, the property of the various stockholders, which is increased by the current yearly profits of the business of the company, while under the mutual system of insurance, there is no joint-stock capital, and the business of the company is commenced without capital, and for a time carried on upon the pledges of its friends of future premiums.
-v The profits, resulting from the business of the company engaged in mutual insurance; belong to the various parties insured, and are returned to them in form of scrip certificates, which are from time to time redeemed by the company. The only capital which the mutual insurance company, possesses is the profits of the company, thus represented by scrip certificates issued to the various patrons or parties insured by the company.
-By. the charter of the Louisiana Mutual Insurance Company, the amount of scrip certificates, which alone constitutes the capital of the company, is fixed at five hundred thousand dollars ; whenever the net profits exceed this sum of five hundred thousand dollars, the excess is employed from year to year in redeeming the scrip certificates issued, while new certificates are annually issued for the current net profits of the year. Charter, Art. 10.
The trustees of the company have never varied from the terms of the charter, and the net profits have annually been distributed to the parties insured in scrip certificates, and the capital kept, as nearly as practicable, • at the amount fixed by the charter.
*477 As, under the terms of the charter, certificates are not issued for fractions under ten dollars, it is impracticable to preserve the scrip capital always at any precise given point, but the charter has been the law of the trustees to guide them in their administration, and they have never materially departed therefrom.
In 1859 the capital was $573,500, as shown by the sworn statement of the company, in accordance with the requirements of law, represented by the scrip certificates of 1858 and 1859.
Notwithstanding, that in the annual statement of the company, made March 1st, 1859, the assets figure up to a much higher amount, the capital of the company remains the same, and is not materially changed.
The assets may be increased, so may the liabilities, while the capital. remains unchanged.
The lower Court erred in the confusion of terms, and considering assets and capital synonymous and convertible terms.
The authorities referred to by the lower Court, 8 N. S. 638 and 681, do not warrant the confusion of terms, nor support the conclusions of- the Court. ;•
The terms assets and capital are neither of them found in any part, of the opinion of the Court in the latter case, and in both cases, the question is, whether the entire capital of the company, as fixed by their charter, is subject to taxation, though but a portion thereof has been paid in. The insurance company claimed, that as but one-tenth of their capital was paid in, it alone constituted their stock in trade, and was subjeot to taxation. The Court decided that their stock in trade was their capital, as fixed by their charter, and subject to taxation, whether paid in or only secured.
If these cases apply in any manner to the case at bar, the force of the decision is in favor of defendants, and goes to the effect that Courts will be governed by the capital fixed by the charter of the company.
We desire, particularly, to call the attention of the Court to the consideration of this point—the difference between the assets and the capital of the company—which has been overlooked by the assessors and the Judge of the lower Court, who, in his reasons for judgment, evidently confounds the terms, and we beg to refer the Court again to onr brief already filed herein, pages 3, 4 and 5. i
The assessor was furnished by the company a full statement of their affairs, by the sworn statement of March 1st, 1859, made and published in .accordance with the requirements of law.
Nothing could be more full and explicit, nothing further could be required. . He was in error in throwing this aside, and making up an amount suited to his own liking. We submit his error should be corrected, and the judgment of the lower Court reversed, and counsel, therefore, respectfully pray for a rehearing of the case.
Rehearing refused.